## The East Ohio Gas Co. v. O'Hara.

*Negligence—Servant liable to fellow-servant, when—Combined negligence of stranger and fellow-servant—Liability as joint tort-feasors—Imputed negligence in joint enterprises—Inapplicable to recovery by servant from fellow-servant or stranger.*

1. A servant is liable to a fellow-servant in the same employment for damages caused by his negligence.
2. The excusing of the master for the negligence of a fellow-servant is based upon contract, and is personal to the master. A stranger, whose negligence, combined with the negligence of a servant, injures a fellow-servant, is not entitled to the benefits of the contract between the master and servant, but the two are liable as joint tort-feasors for their negligent acts.
3. In a joint enterprise, all so engaged are principals, each having control of the agencies and instruments employed to complete and carry out the common purpose, and the relation between them is such that the negligence of one is imputable to the other.
4. The rule of joint enterprise does not apply where the relationship of master and servant, or principal and agent, exists, as these terms are ordinarily and usually understood, so the rule can not be invoked to prevent a servant from recovering from his fellow servant or from a stranger.

(Decided April 14, 1924.)

Error: Court of Appeals for Summit county.

*Mr. S. H. Tolles* and *Messrs. Waters, Andress, Southworth, Wise & Maxon,* for plaintiff in error.
*Messrs. Mather, Nesbitt & Willkie* and *Messrs. Rockwell & Grant,* for defendant in error.

Pardee, J. The parties to this proceeding will throughout this opinion be referred to as the plain-

tiff and the defendant, as they stood in the court below. The plaintiff, Lyman O'Hara, filed his petition in the Court of Common Pleas of Summit county on the 30th day of December, 1922, against the defendant, the East Ohio Gas Company, in which he alleged that on the 10th day of July, 1920, while engaged in the course of his employment as a foreman of the Northern Ohio Traction & Light Co., he descended into a manhole of the traction company, located in Bank alley in the city of Akron, and was seriously injured by an explosion of natural gas which had accumulated therein, which the defendant company had negligently permitted to escape from its pipes located in close proximity thereto.

To this petition the defendant filed an answer, in which it denied all the allegations contained in plaintiff's petition, except that it admitted that O'Hara received some injuries from an explosion in the manhole and that defendant company was engaged in the business described in the petition.

Upon trial to a jury, a verdict was rendered in favor of O'Hara in the sum of $20,000, a motion for a new trial was overruled, and judgment entered upon the verdict. The case is now here on error to reverse that judgment. The principal facts as disclosed by the bill of exceptions are substantially these:

The defendant at the time of plaintiff's injury was engaged in the business of supplying natural gas to the inhabitants of the city of Akron, and for that purpose maintained a 6-inch main through Bank alley from Mill to Market streets—a distance of about 1200 feet, the alley being paved and approximately 12 feet wide. This main is

located approximately 18 inches below the pave-
ment, with service pipes extending to the build-
ings upon either side.   In this alley the Northern
Ohio Traction & Light Co., at the time of the
accident, also had a line of four conduits, made
of vitrified clay pipe, each being 12 or 18 inches
long, not cemented, with a board on top thereof,
being about 10 or 12 inches below the surface and
parallel with the defendant's line and approximate-
ly 15 inches therefrom.   At the time of the acci-
dent the traction company had high-tension wires
or cables in the conduits, enclosed in lead pipe,
with electric current running through the same,
and had a series of manholes and handholds in
the alley along its line in connection therewith,
and in these manholes it had electrical apparatus,
such as cutouts, transformers, etc.   The gas main
of the defendant, the East Ohio Gas Company,
also passed through these several manholes.

The manhole in which O'Hara was injured was
immediately south of Market street and opposite
the Kresge building.   These manholes were all
of solid concrete, so that no gas could get into
them except through the conduits, or through a
city sewer with which they were connected at the
bottom, and all were covered with cast-iron plates
with perforations therein.   The traction company
operated street cars over many tracks upon the
streets in the immediate vicinity of the manhole,
and a large amount of electricity escaped from
these tracks and passed through the earth to these
conduits, and in order to carry off this leakage
from such tracks the cables passing through the
conduits were bonded.

On the day of the accident, which occurred in

the early evening, the plaintiff, under instructions
from his superior, took a gang of men to the alley
to repair the conduit, which had settled at a point
north of the manhole in which he was injured.
O'Hara, being in doubt about the location and
depth of the conduit, went to the manhole further
south to ascertain the alignment and location of
the conduits. When he reached the manhole he
ordered the men with him to open the same, and
he went down a ladder into it, with one Sonceri
following him, and after being there about a min-
ute Sonceri struck a match, causing the explosion,
the death of Sonceri, and the injury of O'Hara.

O'Hara testified that when he reached the bot-
tom of the manhole he smelled natural gas; that
he told the other men to stay out, but Sonceri did
not obey his orders; that when he got down into
the manhole it was dark and he started to go out
to get a flashlight; that he and his men had in-
structions from the company not to use open lights
in manholes; and that he told them not to light
any matches on this occasion. O'Hara further
testified that Sonceri and the other men at the
time of the accident were under his control and
direction, which was also corroborated by other
evidence.

There is no doubt from the evidence that O'Hara
was injured by an explosion of gas. There is
evidence in the record tending to corroborate
O'Hara in his testimony that it was natural gas
which he smelled at the time he entered the man-
hole. There is other evidence in the record, intro-
duced on behalf of the defendant, that the em-
ployes of the defendant made an investigation
of the manhole and others in that vicinity immedi-

ately after the accident and found no odor of gas, and that the air in the manhole was analyzed immediately after the accident and no trace of natural gas or any other gas was disclosed. Other evidence of the defendant showed that a few days after the accident other investigations and analyses of the air taken from the manhole were made and no trace of natural gas or any gas with an odor was discovered, but an analysis did show the presence of 1.6% hydrogen gas, which gas is highly inflammable and explosive when it is found with a percentage as high as 10%, but that gas of this percentage had not been found in any manhole by the witness so testifying.

Other evidence of the defendant proved, or tended to prove, that the leakage of electricity from the railroad tracks and cables of the traction company passing through the earth would reach the conduits of the company, that through water and moisture it would generate hydrogen gas, and that such gas would find its way through the conduits of the traction company to the manhole as readily as natural gas. Other testimony of the defendant proved, or tended to prove, that the heating of the oil in the transformers and cutouts by short circuits would generate hydrogen gas, which would pass through the conduits to the manholes. Other evidence in the record showed that about 18 months after the accident the employes of the traction company were working in the alley, at a distance approximately forty feet south of the manhole in which plaintiff was injured, and discovered a broken gas pipe at right angles to the conduit, which pipe was corroded and rusted and out of which natural gas of the defendant was escaping;

that said pipe was practically rusted away, and that it was easily broken off.

We have not attempted to state in detail all of the evidence which was offered upon both sides to support the various claims of the parties, parts of which were in direct conflict with others, but this, with what will be referred to hereafter in considering the different points, will be sufficient for the purposes of this opinion.

The defendant complains of the following errors, to-wit: first, that the trial court committed error in failing to sustain the defendant's motion to direct a verdict in its favor at the close of all the evidence, as it claims the jury were permitted to speculate and guess as to the liability of the defendant; second, that O'Hara was guilty of contributory negligence, the claim being that he had complete and immediate control of Sonceri, and that Sonceri disobeyed O'Hara's instructions and the instructions of their common employer when he struck the match, that this was negligence as a matter of law, and the proximate cause of O'Hara's injury, and imputable to O'Hara; third, that the trial court committed error in admitting certain evidence; fourth, that the court erred in its general charge to the jury and in refusing to give certain requests of the defendant; fifth, that the verdict was not supported by the evidence; and sixth, that the verdict of the jury was excessive.

As to the first ground of error, we disagree with the defendant, for the reason that even if the other grounds of error about which it complains are well taken the court would not have been justified in taking the case from the jury, because in our opinion there was sufficient evidence, under the rules

established in numerous cases by the Supreme Court of this state, to require the trial judge to submit the issues to the jury. Upon the making of such motion the defendant, for the purposes thereof, admitted all the facts to be fully established which the evidence proved or tended to prove. This rule is best set forth in the case of *Ellis & Morton* v. *Ohio Life Ins. & Trust Co.,* 4 Ohio St., 628.

Before we take up the other grounds of error which the defendant claims intervened and prevented it from having a fair trial, it will be necessary for us to discuss a few of the principles which we think govern and control the decision in this case.

The evidence clearly shows that the plaintiff and Sonceri were in the employ of a common master, and that O'Hara was the superior of Sonceri. The evidence further proves or tends to prove that Sonceri, at the time he lit the match, did so contrary to the direct orders of O'Hara and of the rules of the common master. In arriving at a proper conclusion it must be remembered that O'Hara is not suing the common master for injuries which he received through the alleged negligence of a fellow employe, who was superior to him, but that O'Hara is suing a third party for its negligence, to which third party both O'Hara and Sonceri are strangers; that in such situation the relation of master and servant and the law of liability and exemption from liability applicable thereto do not apply.

Conceding that Sonceri was negligent at the time he lit the match, he, if alive, or his estate, if he were dead, would be liable for the inju-

ries O'Hara suffered, if O'Hara was free from contributory negligence. O'Hara under these circumstances would have been able to maintain an action at law and recover damages for his injury from Sonceri or his estate. This seems to be the settled law, well recognized and established by reason and the great weight of authority in this country, although contrary to the early view, which was that one employe could not recover from a co-employe for the latter's negligence in the same employment. In the case of *Rogers* v. *Overton*, 87 Ind., 410, the court on page 411 of its opinion says:

"The fact that Rogers and Overton served the same master does not preclude the latter from maintaining an action against the former for a wrongful or negligent act. A servant may maintain an action against his fellow servant for injuries received in the master's service."

In the case of *Osborne* v. *Morgan*, 130 Mass., 102, the syllabus holds:

"One servant is liable to an action by another servant in the employment of the same master for damages occasioned by the negligence of the first in such employment."

Also, in the case of *Griffiths* v. *Wolfram*, 22 Minn., 185, the syllabus reads:

"Where several persons are engaged in the same work, in which the negligent or unskilful performance of his part by one may cause danger to the others, and in which each must necessarily depend for his safety upon the good faith, skill and prudence of each of the others in doing his part of the work, there it is the duty of each to the others engaged on the work to exercise the care and skill

ordinarily employed by prudent men in similar circumstances, and he is liable for any injury occurring to any one of the others by reason of a neglect to use such care and skill.''

In an opinion rendered by the Circuit Court, first Ohio circuit, in the November term, 1886, *Stegeman, Admx.,* v. *Humbers,* 2 C. C., 51, that court held that if a servant is negligent in the discharge of his duties, and a fellow servant in the same employ comes to his death, the former is liable, and in the opinion, at page 54, the court says:

''But if Humbers himself was negligent in the discharge of his duties, or committed a positive act of misfeasance or trespass, by means of which the deceased came to his death, he can not shelter himself under the plea that the master is liable, and not himself.''

Sonceri being a fellow employe with O'Hara, and being liable in damages for his (Sonceri's) negligent acts, what situation do we find exists among O'Hara, Sonceri and the defendant? Can the alleged negligence of Sonceri be imputed to O'Hara by the defendant and relieve it from liability for its acts if those acts are negligent and O'Hara suffered injuries thereby? It must be remembered that O'Hara and Sonceri were not working for the defendant, and if O'Hara was free from negligence he suffered injury either because of the sole negligence of Sonceri, the sole negligence of the defendant, or the joint negligence of the defendant and Sonceri. If he received his injuries through the sole negligence of Sonceri, of course the defendant would not be liable; but if he suffered his injuries through their joint negligence, or

the sole negligence of the defendant, and he himself was free from negligence, the defendant would be liable.

O'Hara and Sonceri being fellow employes as to The Northern Ohio Traction & Light Co., and not being such as to the defendant, the East Ohio Gas Company, can the defendant take advantage of the alleged negligence of Sonceri to relieve it from liability if it is itself negligent? We do not believe it can.

The relation of master and servant is based upon contract, and when fellow servants accept employment under the common master they assume the hazards of such employment, and are presumed in law to stipulate for their compensation according to their estimate of such hazards. This being the basis upon which the original doctrine of nonliability for the negligence of fellow servants was founded, it of course could not apply to strangers who do not occupy a contractual relation with the injured party. This seems to be recognized by all the courts in the decisions which we have been able to find upon the subject, and they are numerous. In the case of *Nonn* v. *Chicago City Ry. Co.*, 232 Ill., 378, decided in 1908, the court in its opinion says at page 382:

"The doctrine of contributory negligence on the part of a fellow-servant cannot be invoked by a stranger against an injured party. The law is well settled that in such a case as to the stranger the rule of fellow-servant does not apply."

In the case of *Kentucky & Indiana Bridge & Railroad Co.* v. *Sydnor*, 119 Ky., 18, the court in the fourth proposition of its syllabus says:

"4. The doctrine of nonliability of a master for

injury to a servant caused by the negligence of a
fellow servant is based upon the implied contract
of the servant to assume the risk of his fellow
servant's negligence, and does not extend to a
stranger to the relation, who in conjunction with
a servant injures a fellow servant of the latter,
but he is liable like any other joint tort-feasor.''

On page 29, the court, in its opinion, says:

''But this assumption by the laborer of his
fellow servant's negligence—or, to put it different-
ly, the excusing of the master for the act of such—
is the result of the contract between the master and
the servant, and is personal to them. A stranger
to the contract is not entitled to its benefits, for
he does not bear any of its obligations. As to
him, the fellow servant with whom he acts in
doing the wrong is like any other joint tort-feasor.
They are both liable for the injury they have in-
flicted by their negligent acts.''

O'Hara was not the master or the superior of
Sonceri in the sense that he would be responsible
to third parties for the negligent acts of Sonceri,
as O'Hara and Sonceri, between themselves, did
not bear the relation of either master and serv-
ant or principal and agent. Therefore the negli-
gence of Sonceri, if there was any, could not be
imputed to O'Hara.

It has been suggested in the brief of the de-
fendant that O'Hara and Sonceri were engaged in
a joint enterprise and the negligence of one there-
fore is imputable to the other, and they cited in
support of this theory the case of *Town of Knights-
town* v. *Musgrove,* 116 Ind., 121.

We fully recognize the rule as set forth in
that opinion as the one which governs cases upon

facts as therein disclosed, but, as we understand the rule of joint enterprise, it does not apply to cases where servants are working for a common master, and cannot be invoked to prevent one servant from recovering from his fellow servant or from a stranger. As we understand the rule, a joint enterprise cannot be where the relation of master and servant, or principal and agent, as ordinarily and usually understood, exists, because in a joint enterprise all so engaged. are principals, and in order to impute the negligence of one to the other in such an enterprise, each participant must have control of the agencies or instruments employed to complete and carry out the common purposes. O'Hara in this instance being the foreman or superior of Sonceri, and being in full control of Sonceri and the agencies employed, and the relation of fellow employe under a common master existing, there could not be what is known in law as a joint enterprise. This conclusion is fully supported by a recent case, decided in California on the 23d day of July, 1923, entitled *Meyers* v. *Southern Pac. Co.*, reported in 63 Cal. App., 164, wherein the court, in the second and third propositions of the syllabus, holds:

"2. Where persons use an automobile in a joint enterprise the negligence of one of such persons is imputed to each of the others; but except in those cases in which the relation of master and servant, or that of principal and agent, is shown, there can be no such thing as imputed negligence.

"3. A joint enterprise is not indicated by the fact that the guest and the driver each sought the same destination and by means of the same conveyance, but there must be a community of interest

in the objects or purposes of the undertaking and an equal right to direct and govern the movements and conduct of each other with respect thereto, and each must have some voice and right to be heard in its control and management."

And in the case of *Hines* v. *Welch* (Texas), 229 S. W., 681, in the fourth paragraph of the syllabus, the court held:

"4. The principle of imputed negligence rests on agency or authority of each, express or implied, to act for all in respect to the control of the means or agencies employed to execute the common purpose or enterprise."

In the most recent case that we have been able to find on the subject of joint enterprise—that of *Donoghue* v. *Holyoke Street Ry. Co.*, (Mass.), 141 N. E., 278, the third proposition of the syllabus reads:

"3. Where fire lieutenant was in charge of fire truck, on which he and others were riding, and of the men on it, a fireman and the other occupants of the truck were not engaged in joint enterprise, so as to impute to him the negligence of the others."

We are therefore unanimously of the opinion that if the decedent Sonceri was guilty of negligence, and it does not make any difference whether he was a fellow servant or a co-employe, which, combined with the negligence of the defendant, caused the injuries which plaintiff suffered, that negligence could not be imputed to plaintiff and would not bar him from a recovery from the defendant, if other facts and circumstances justified the jury in so finding; and we do not believe the facts as shown by the record in this case

justified the application of the doctrine announced in the case of *Cincinnati Gas & Electric Co.* v. *Archdeacon, Admr.,* 80 Ohio St., 27, as claimed by defendant.

Having reached this conclusion upon the foregoing points, we will now consider the other grounds of error alleged by the defendant for a reversal of the judgment.

Second, that O'Hara was guilty of contributory negligence.

The conclusion we have hereinbefore indicated, that the alleged negligence of Sonceri could not be imputed to O'Hara, either under the fellow servant rule or as a joint enterprise, disposes of this ground of error, because it does not make any difference, under what we consider to be the law, whether Sonceri was guilty of negligence or not when he lit the match at the time and under the circumstances that he did, unless such act of his was the sole cause of the injury to the plaintiff.

The third ground of error claimed by the defendant relates to the admission of certain evidence. Especial complaint is made in regard to the testimony of witnesses offered by the plaintiff as to the leaky condition of the pipe found by them about a year and a half after the accident, and also their testimony as to their smelling gas in the manhole at a time subsequent to the accident. The evidence of these witnesses showed that about eighteen months after the accident, while they were working for the traction company in the alley, and at a place about forty feet south of the manhole, and close thereto, where the accident occurred, they found a broken service pipe of the defendant, rusted, out of repair and in decay,

out of which pipe natural gas was flowing, and that they immediately notified the defendant of the condition and defendant sent its men down to repair the same.

As we understand the law in regard to evidence of this character, it is not admissible for the purpose of showing negligence on the part of the defendant, but is competent, if not *too remote*, for the purpose of establishing the condition of the pipe at the time the accident occurred. In the case of *Norris* v. *Atlas Steam-Ship Co.*, 37 Fed., 426, the first paragraph of the syllabus reads:

"In an action for injuries alleged to have been received from the falling of a maintopmast-stay on defendant's vessel, causing plaintiff's hand to be caught in an exposed winch, evidence that immediately after the injury the defendant caused the stay to be replaced and a guard to be put up at the winch, is admissible to show the actual condition of the stay and winch at the time of the injury."

In the case of *Kath* v. *East St. Louis & Suburban Ry. Co.*, (232 Ill., 126), 83 N. E., 533, the first proposition of the syllabus reads:

"In an action for the death of an electric railway conductor killed by coming in contact with a pole supporting the trolley wire, where evidence of measurements made several months after the accident was introduced to show the distance of the pole from the track, evidence that the pole had been moved further from the track after the accident and before the measurements were taken was admissible on the question of the pole's location at the time of the accident."

The court at the time this evidence was admitted

stated that it was being admitted for the purpose of showing the condition of the pipe, and the court in its general charge and in defendant's special request No. 10, instructed the jury the purpose for which it was admitted and that they could not consider the making of the repairs subsequent to the accident as bearing upon the question of negligence; and we do not believe, under the circumstances of this case, that evidence of the repairs made eighteen months after the date of the accident is too remote to be admitted for the consideration of the jury—this going to the weight which should be given to the evidence rather than to its competency.

Complaint is also made that the trial court permitted the witnesses Goldlust and Pollard, offered by the plaintiff, to give their opinion as to how long the pipe had been in the condition in which it was found.

We do not believe that any error intervened in regard to the admission of this evidence, taken with the evidence of one of the witnesses for the defendant upon the same subject, whose testimony, as an expert, tended to corroborate the evidence of the witnesses for the plaintiff. Both of these witnesses testified that they had had several years experience in this line of employment, and from their testimony it is apparent that they were well qualified to give an opinion as to the life of a pipe in the ground. Goldlust especially qualified as to his ability to testify in regard to this particular piece of pipe, as he was the one who examined it at the time it was found in its leaky condition. That one would be qualified to testify in regard to matters of this character was strengthened and

justified by the cross-examination of Laughlin, one of the witnesses for the defendant, who testified, without objection or exception, that one could tell from an examination of a pipe which was rusted and thin and leaking, whether or not it had been leaking for a considerable length of time, and no evidence was introduced by the defendant to cast doubt upon or contradict the evidence thus given.

The next ground of error alleged by the defendant grows out of the refusal of the court to give the defendant's special requests Nos. 3, 6, 7, 9 and 11, before argument.

Special request No. 3 was properly refused by the court because it imposed too much of a duty upon the plaintiff in regard to making an examination. of the manhole before he entered the same, and it also would impute the negligence of Sonceri, if there was any, to the plaintiff, for which, as hereinbefore set forth, he is not responsible as against the defendant.

Special request No. 6 was properly refused because it contained this phrase: "The plaintiff must fail if *his* evidence does not show the damage produced," and leaves out of consideration any and all evidence introduced by the defendant which might prove or tend to prove the claim of the plaintiff.

Special request No. 7 was properly refused, because this request, again, would impute to the plaintiff the negligent acts of Sonceri and hold him responsible therefor.

Special request No. 9 was properly refused because there was included therein the words "or tend to prove" that although witnesses smelled gas

in the vicinity of the manhole in which the plaintiff was injured, that fact could not be considered by the jury as to the condition of the defendant's pipes at the time of the accident. While this evidence would not be in itself sufficient to establish that defendant's pipes were out of repair and in a leaky condition at the time of the accident, still, taken in connection with the other properly admitted evidence, it might have some weight with the jury.

Special request No. 11 was also properly refused, because it also imputed to the plaintiff the alleged negligence of Sonceri at the time he lit the match.

In the view which we take of the law which governs this case, some of the other special requests before argument asked by the defendant were improperly given, and should have been refused.

Complaint is also made of the general charge which the court gave to the jury.

We have read this charge carefully, having in mind the complaints that are made in regard thereto, and we are unable to find any misstatements or errors therein prejudicial to the defendant; in fact, from our examination of it, we find that it was far too favorable to the defendant, and cast a greater burden upon the plaintiff than the law requires.

The other errors alleged by the defendant are that the verdict is not supported by the evidence and is excessive.

We have carefully read all of the bill of exceptions, and have reread parts of it, and from such examination we are satisfied that the plaintiff was free from negligence at the time of the acci

dent; that there was an explosion of gas and the plaintiff was severely injured thereby; that there was direct evidence that the explosion was caused by the ignition of natural gas in the manhole in which the defendant was in the furtherance of his duties as an employe of the traction company; that the evidence proved, or tended to prove, that this gas escaped from a defective pipe of the defendant in close proximity to this manhole and followed the conduits of the traction company into the manhole; that the acts of Sonceri could not, as a matter of law, be imputel to the plaintiff, whether Sonceri was negligent or not at the time he lit the match; that the jury were justified in finding from the evidence that the defendant was guilty of negligence, that this negligence was the proximate cause of plaintiff's injury, and that the same was proved by a preponderance of the evidence. We are further satisfied from the facts as disclosed by the record, taking into consideration the age of the plaintiff, his earning capacity before and after the accident, the nature of his wounds, and his condition before the accident and at the time of the trial, that the amount of the verdict as returned by the jury is not excessive.

Not finding any errors in this record prejudicial to the defendant, and which prevented it from having a fair trial, we are of the opinion that the judgment of the lower court ought to be, and it hereby is, affirmed.

*Judgment affirmed.*

Funk, P. J., and Washburn, J., concur.