HELDMAN, APPELLEE, *v.* UNIROYAL, INC., APPELLANT.

[Cite as Heldman v. Uniroyal, Inc. (1977),
53 Ohio App. 2d 21.]

22

(No. 35498—Decided June 20, 1977.)

*Mr. Thomas Heffernan,* for appellee.
*Mr. Edward J. Brzytwa,* for appellant.

KRENZLER, J. On March 21, 1973, plaintiff-appellee, Julie M. Heldman, hereinafter referred to as the appellee, filed a complaint against the defendant-appellant, Uniroyal, Inc., hereinafter referred to as the appellant.

In her principal claim for relief she alleged that one of the appellant's divisions marketed and sold a special synthetic rubber material which was claimed to be suitable for use as an outdoor tennis court surface and that this surface is known as the "Uniroyal Roll-A-Way Tennis Court." She alleged that the appellant made certain representations and warranties, both express and implied, that its Roll-A-Way tennis court was free of dents, hollows, soft or rough spots and was safe and fit for its intended use as a tennis court playing surface; that the appellant contracted to supply, install and maintain one of its Roll-A-Way tennis courts for use during the August, 1971, Wightman Cup tennis championships between the United State and Great Britain and that as a tennis professional and a member of the United States team in its match against Great Britain and in the course of early play the Roll-A-Way, contrary to the appellant's representations

and warranties, began to blister and come loose at the seams, making footing uncertain and play unreasonably hazardous. She further alleged that the Roll-A-Way tennis court was defective and not reasonably fit for its intended use by professionals; that while engaged in a singles match against Virginia Wade of Great Britain she was caused to suffer severe injury to her left knee and that this injury came about as a direct and proximate result of the defective condition of the playing surface and the breach of representations and warranties of the appellant.

Her second claim for relief is in the form of a negligence action. The balance of the complaint is concerned with the alleged injuries and damages and the prayer for relief which are not issues in this appeal.

The appellant filed an answer in the form of a general denial and also alleged that any injury of the appellee was proximately caused or contributed to by her own negligence and also was the result of the appellee assuming the consequences of a known risk.

The appellant filed a motion for summary judgment pursuant to Civil Rule 56(B), and this motion was overruled. The case was subsequently tried to a jury.

Testifying for the appellee relevant to the issues in this appeal were Carole Graebner, Virginia Wade, Sheldon Westervelt, Julie Heldman, and Sandra Hosak. Reference was made in the briefs to the testimony of Christine Sue Pigeon, a teammate of the appellee, but her testimony does not appear in the transcript of testimony and will not be considered. The appellant relied on the cross-examination of the appellee's witnesses and the testimony of Andrew J. Lee, who was the National Sales Manager for Uniroyal Recreational Surfaces at the time of the accident.

Testimony introduced at trial concerned events which occurred between August 18, 1971, and August 23, 1971, which included three periods: (1) the practice period from August 18 to August 21; (2) the date of the Wade-Heldman match on August 21; and (3) the period after the Wade-Heldman match to August 23, the date of the Wade-Evert match.

Carole Graebner testified that she was the captain of the United States tennis team in the Wightman matches. with Great Britain. She stated that there were air pockets. underneath the tennis court; that the ball was taking bad bounces; that she observed gaps or spaces between the sections of the tennis court; that the surface was a little tacky and that she told all her team members to watch. out for these things. She stated that the problem continued all week and that this could be observed when walking on the court. She further testified that they had to practice indoors during the week because rain seeped underneath the tennis court.

She was asked her opinion as an expert as to whether the condition of the court rendered it unsafe to play. She stated that it was hazardous and there were constant problems. Whenever they fixed one section, a new problem arose. The tape was not sticking to hold the tennis court down; there were gaps or spaces in the court; there were air pockets; and there were problems with water. She told Uniroyal to fix the court to prevent anyone from getting hurt. Eventually, she let her team play because she was assured that the court was fixed. She testified that the people from Uniroyal were ''squeegeeing'' water from under the court on Friday, August 21, after the rain and before the Wade-Heldman tennis match.

Virginia Wade, a member of the British Wightman Cup team and the appellee's opponent at the time of the injury, testified by way of deposition. Defense counsel objected to the introduction of Virginia Wade's testimony because it related to events occurring two days subsequent to the accident and that conditions had changed so dramatically between the date of the accident and August 23 as to make it irrelevant and highly prejudicial. There is no testimony in the record that the conditions of the tennis court on August 23 were the same as the conditions of the court on August 21. The trial court overruled the objection on the ground that the dramatic changes referred to were issues for the jury to decide and that the condition of the court two days subsequent to the event upon which

the case was brought was relevant in that it tended to show what the condition was on the date of the accident.

Virginia Wade testified that she did not like synthetic surfaces or concrete tennis courts because they cause bad bounces. She discussed the condition of the court several times with her team. She did not expressly testify in regard to the conditions on August 21 other than to state that there were bubbles and bad bounces. Most of her testimony was concerned with conditions of the court on August 23 and her actions on that date. She stated that there had been a thunderstorm the night before and that on August 23 the ball was taking bad bounces, the seams were loose, and there was water on the court. Consequently, she ripped up part of the tennis court, lifting it by the seam. Workmen then had to lay it back down and tape it. She testified that she could feel the water splurge under the surface. She further stated that when a tennis court is in such a condition the players are somewhat afraid to run because there is always a chance that one will get hurt but that they continue to play because they are professionals.

Sheldon Westervelt, the expert witness of the appellee, testified that total adhesion is necessary to prevent water from getting under the tennis court which upon vaporizing causes bubbles creating a dangerous condition. He stated that the bubbles cannot be seen by the eye.

He testified that the .04 inch of rain before the Wade-Heldman match was sufficient to put water under the tennis court and that sidewise movement of the tennis shoes causes the rubber of the court to pucker and impede the motion of a player. He also testified that it rained .33 of an inch after the Wade-Heldman match.

Julie Heldman testified that she practiced on the court for one hour on August 19, 20 and 21 and for twenty minutes before the match with Virginia Wade. During the earlier practice sessions she noted that there were bubbles in the court and that she was having bad bounces. She complained about the court condition to Carole Graebner, who tried to get the problem solved but the court remained

unsatisfactory. During the twenty-minute pre-match practice session, Heldman again noticed that she was getting bad bounces

She stated that she never refused to play because of court conditions and that no court had ever been that bad. She stated that because she is a professional tennis player the show must go on. She testified that she thought that the bubbles would produce only bad bounces but that she did not consider them to be or to constitute a risk. At the time of the injury, something moved beneath her foot but she did not see a bubble. Her principal complaint was about the existence of bubbles and not about the loose seams. She stated that she talked to Carole Graebner about the court and Carole advised her that it was fixed but never told her that it was hazardous. Heldman further testified that she did not form an opinion on whether the court was hazardous before the match but that after the match she began to think about it.

Sandra Hosak testified on direct examination that she is a clerk at the editorial library of The Cleveland Press and that the Press uses photographs as part of its daily business. She testified that appellee's Exhibit 74 was received in the Cleveland Press library on August 27, 1971, and filed under the caption "Harold T. Clark Stadium." She also read the printing on the back of the picture. On cross-examination, she testified that she did not know the date the picture was taken but that the date of August 27 was the date the picture was recorded in the library.

Appellee's Exhibit 74 is a picture of Virginia Wade watching two men on bended knees in front of a group of spectators. On the reverse side of the picture, written in longhand, is the language, "Harold T. Clark Stadium, Unhappy Virginia Wade watches as workmen repair tennis surface." There is a stamp on the back of the picture stating, "Cleveland Press Reference Department, August 27, 1971," and another stamp, "Photo by Paul Tepley."

Two of the appellee's exhibits are relevant to the issues in this appeal. The first is Exhibit 2, which is a local climatological report of the United States Depart-

ment of Commerce for August 1971. It reflects that on August 20 there was .04 of an inch and a trace of rain. This was before the Wade-Heldman match. It also reflects that on the evening of August 21, after the Wade-Heldman match, there was .33 of an inch plus a trace of rain and that on August 22 there was .07 of an inch of rain. This report was admitted into evidence without objection and the amount of rain on August 20, August 21, and August 22 was not disputed.*

The second exhibit is appellee's Exhibit 74 which is a picture of Virginia Wade standing and watching two men who are kneeling in front of a group of seated spectators. Reference was previously made to the legends on the back of the picture. There was an objection to this exhibit when it was identified and marked for evidence. Subsequently, counsel for the appellee moved to formally admit Exhibits 1 through 76, with the exception of Exhibits 55, 56, 57, 58, 59, 60, and 61, which were withdrawn. Defense counsel stated: "Let the record reflect that the defendant has no objection to the documents tendered but for plaintiff's Exhibits 4, 5, 6, and 7, I have no objection—No objection to everything but 5, 6, 7, and 4."

Mr. Andrew Lee, former Sales Manager for Uniroyal Recreational Surfaces, who supervised the installation of the tennis court, testified on behalf of the appellant that on Wednesday, August 19, there was some general moisture under the court; that it rained on Thursday evening and early Friday morning, August 20 and August 21, and there was water on the tennis court which was cleaned up with towels; that he inspected the seams to make sure that a lot of water had not gotten under the court; that he inspected the court before the matches by checking the seams, bounc-

---

*Plaintiff's Exhibit 2, the local climatological data, reflects rain as follows:

On August 20, hour ending 1 a. m., .04 of an inch and hours ending 2 a. m. and 3 a. m., a trace;

On August 21, 1971, hours ending at 6 p. m., .29 of an inch; 7 p. m. .03 of an inch; 9 p. m., .01 of an inch; 10 p. m., a trace, and on August 22, 1971, the hour ending at 10 p. m., .07 of an inch.

ing the balls and walking on the entire court; and that he did not observe bubbles or dead spots. He further testified that the two captains complained of dead spots during the week but he could not find them and did not observe a defect or irregularity before the Wade-Heldman match. On cross-examination, he testified that moisture from the subsurface or dampness after the rain on August 20 was present but that there were no puddles. He admitted, however, that after the rain on Friday, August 21, rain filtered through and flooded the court on Sunday, August 23, and that the surface was not waterproof. He further admitted on cross-examination that a tennis court with bubbles and dead spots would be dangerous and unsafe because of the possibility that players could trip over the bubbles.

At the conclusion of all of the testimony and before the jury retired, the appellant proffered a special instruction on assumption of the risk which the court refused to give.

After the trial court instructed the jury, it submitted six interrogatories, which the jury returned with a verdict for the appellee in the amount of $67,000. The interrogatories and the answers are as follows:

"1. Was the defendant Uniroyal negligent in one or more of the particulars claimed by the plaintiff?

"Answer: Yes.

"2. If the answer to the previous special interrogatory was yes, what did such negligence consist of?

"Answer: In the opinion of the jury, the defendant did not take the necessary precautions to insure the proper bonding of the court surface which they had provided to the existing subsurface. Too broad of an area existed between the strips of 3M double face bonding tape and the jury feels that at the very least, many more strips of bonding tape should have been used to insure a more secure surface.

"3. If Uniroyal was negligent, was such negligence a proximate cause of any injuries sustained by the plaintiff?

"Answer: Yes.

"4. Did you find that the tennis court surface was de-

fective and dangerous for its intended use at the time the plaintiff was injured?

"Answer: Yes.

"5. If the answer to the previous special interrogatory was in the affirmative, what did such defect consist of?

"Answer: The court system which was provided by Uniroyal Corp. in this instance and the method of its installation permitted the accumulation of condensation and vapor which created a surface which was unsafe and dangerous to play on.

"6. If a defect existed at the time the plaintiff was injured, did such defect proximately cause the injury to the plaintiff?

"Answer: Yes."

The appellant filed a motion for a new trial which was overruled by the trial court. The appellant has taken this appeal and has four assignments of error as follows:

"I. It was error to introduce Exhibit 74, a photograph which had written upon it, 'Unhappy Virginia Wade' watches as workmen repair tennis court surface.

"II. It was error to permit the introduction of evidence of repairs to the tennis court surface which occurred subsequent to the injury alleged.

"III. Under the circumstances of this case it was error to introduce evidence of the condition of the tennis court surface after the date of the injury.

"IV. It was error to refuse to instruct on the defense of assumption of the risk."

*I.* The appellant's first assignment of error is that the trial court committed prejudicial error in admitting appellee's Exhibit 74 into evidence because it was not properly identified and qualified.

The appellee contends that the trial court properly allowed the introduction of Exhibit 74 into evidence because: first, it qualifies under R. C. 2317.40, the business record rule; second, it is cumulative of the direct testimony of Virginia Wade; and third, if it is error, it is harmless error.

The appellant contends that the only testimony in re-

gard to the admission of this exhibit was that of a clerk of the editorial library of The Cleveland Press that it was received by the library on August 27, 1971, and was kept in the course of the newspaper's daily business. The appellant further contends that in order for a photograph to be admitted into evidence, it must be properly authenticated, the person who took the picture identified and testimony introduced that the photograph is a true likeness of the objects photographed at the time of the occurrence under consideration in the case. The appellant maintains that no testimony was elicited in this regard.

The appellant also argues that the picture is not admissible as a business record under R. C. 2317.40 because that statute pertains to an exception to the hearsay rule and is not a waiver of the rule requiring authentication of the photographs.

Finally, the appellant contends that the photograph could not be admitted under the business record exception because there was no testimony that the record was made under the supervision of any person, of the identity of that person and that it was made in the regular course of business at or near the time of the act, condition or event.

The appellee argues that Exhibit 74 was sufficiently authenticated because it was contained in the morgue of The Cleveland Press and produced under a subpoena by the custodian of the records; because it was date stamped August 27, 1971, which indicates it was filed at The Cleveland Press; because the custodian testified that such items are generally filed the same day as they are taken or a few days later; and because the photograph indicated the name of the photographer. Further, the appellee argues that the photograph was simply a visual repetition of Ms. Wade's testimony concerning the condition of the court when she tore a strip of it from the playing surface. Ms. Wade testified that on August 23 she had so many bad bounces that she became annoyed and put her foot under the seam and lifted it up.

Finally, the appellee contends that the admissibility of photographs is discretionary with the trial court and if

its admission was an error, it was harmless error.

The rule is well settled that photographs are not objectionable as long as they are properly identified, are relevant and competent and are accurate representations of the scene which they purport to portray. A picture cannot be admitted without a proper foundation. There must be, testimony that the photograph is a fair and accurate representation of that which it represents. *See State* v. *Hill* (1967), 12 Ohio St. 2d 88, 90; *Cincinnati, Hamilton & Dayton Ry. Co.* v. *De Onzo* (1912), 87 Ohio St. 109; *Ohio Power Co.* v. *Diller* (1969), 18 Ohio App. 2d 167; *DeTunno* v. *Shull* (1956), 75 Ohio Law Abs. 602. In the present case there was no testimony that Exhibit 74 was a fair and accurate portrayal of the conditions of the tennis court on August 23 as testified to by Virginia Wade. Therefore, Exhibit 74 does not qualify as photographic evidence.

Further, the introduction of appellee's Exhibit 74 does not satisfy the requirement of the business records rule of R. C. 2317.40. This rule requires that the custodian or the person who made the record or under whose supervision the record is made testify to its identity and the mode of its preparation and that it was made in regular course of business or at or near the time of the act, condition or event. The testimony of Sandra Hosak does not satisfy these requirements of R. C. 2317.40 to permit introduction into evidence of appellee's Exhibit 74.

Also, Exhibit 74 cannot be admitted as a visual repetition of Ms. Wade's testimony concerning the condition of the court on August 23, 1971, because the record contains no testimony that Exhibit 74 was a fair and accurate portrayal of that condition. In other words, there was no evidence in the record linking or relating her testimony with Exhibit 74 which would make Exhibit 74 supplementary or cumulative of the testimony given by Virginia Wade.

In conclusion, Exhibit 74 should not have been admitted because it was not qualified as a photograph, did not satisfy the requirements of R. C. 2317.40, and was not cumulative evidence of Ms. Wade's testimony.

As we noted above, however, although the appellant objected to appellee's Exhibit 74 at the time that it was marked for identification, at the time that it was introduced and admitted by the court, the appellant stated that it did not object to the exhibit's introduction into evidence. Because the appellant withdrew its objection to the admission of the picture at trial, it waived its right to object to the admission of the picture on appeal. Therefore, the first assignment of error is not well taken.

*II.* and *III.* The second and third assignments of error will be considered together because they both relate to the condition of the tennis court on August 23, two days after the injury to the appellee.

As to the admission of testimony of the condition of the tennis court on August 23 to establish the condition of the tennis court on August 21, the appellant contends that the rainfall prior to August 21 was .04 of an inch and that the rain after August 21 and before August 23 was .33 of an inch or nine times as much. The appellant further maintains that this substantial difference in amount requires a conclusion as a matter of law that conditions were not the same on August 23 and August 21, and that to allow evidence of the condition on August 23 from which the condition on August 21 could be inferred was prejudicial error. The appellee contends that since it rained prior to August 21 and prior to August 23, evidence of the condition of the court on August 23 was properly admitted to demonstrate the condition of the court on August 21.

It is our conclusion that both the appellant and the appellee are in error. The appellant is not correct in arguing that circumstances changed as a matter of law and the appellee is not correct in arguing that under these circumstances the jury could infer that the conditions were the same.

The principal issue in this case is whether the tennis court installed by the appellant presented a hazardous or dangerous condition which caused the appellee to injure her right knee on August 21, 1971. The appellee introduced sufficient evidence upon which to submit this issue to the jury, based on the testimony of Carole Graebner, Sheldon

Westervelt and the appellee. The appellee also presented evidence of the condition of the tennis court on August '23, two days after the accident and following a heavy rain, in order to emphasize the dangerous condition of the tennis court on August 21. This was done principally through the testimony of Virginia Wade. The appellant relied on the testimony of Andrew Lee that the tennis court was not dangerous on August 21.

The general rule is that testimony of conditions of a place subsequent to the date of an accident is not admissible into evidence to demonstrate conditions at the time of an accident unless the conditions were the same on both dates. *Boles* v. *M. W. & Co.* (1950), 153 Ohio St. 381; *Byrd* v. *Baltimore & Ohio Rd. Co.* (1966), 10 Ohio App. 2d 187; *Barbour* v. *Baltimore & Ohio Rd. Co.* (1957), 105 Ohio App. 191. Evidence must be presented that conditions were the same or substantially the same on both dates before evidence of conditions subsequent may be admitted. Where there is a substantial change of conditions after the date of the accident or where there are intervening circumstances which substantially change conditions, evidence of the conditions on a date subsequent to the accident is not admissible to establish conditions on the date of the accident. If this evidence were allowed, the jury would be permitted to speculate as to whether conditions were or were not the same at the time of the accident and on the date subsequent to the accident. In the present case, there was no testimony that the condition of the tennis court, especially as to any danger or hazards, was or was not the same on both August 21 and August 23. There was only testimony as to the condition of the tennis court on both August 21 and August 23. Rainfall of .4 of an inch is substantially greater than rainfall of .04 of an inch and this could have been an intervening cause to change conditions of the tennis court between the two dates. To allow the jury to speculate or to infer that the conditions on August 21 were the same as they were on August 23 without any evidence to demonstrate that the conditions were the same on both dates was prejudicial error.

Appellant also contends that the trial court should

not have admitted into evidence testimony of the repairs of the tennis court on August 23 after Virginia Wade lifted the tennis court up by the seam. The basis of this argument is that evidence of repairs subsequent to the date of an accident is not admissible to demonstrate negligence or as an admission of negligence. However, the appellant concedes that evidence of subsequent repairs is admissible if it establishes the condition of the tennis court at the time of the accident.

The appellee contends that evidence of repairs was introduced only for the purpose of impeaching Mr. Lee's testimony in his pre-trial deposition when he stated that the tennis court was impervious to water.

The law is well settled that evidence of repairs subsequent to the date of an accident cannot be introduced to show negligence or as an admission of negligence but can be used to establish conditions at the time of the accident. *Lacy* v. *Uganda Investment Corp.* (1964), 94 Ohio Law Abs. 73; *East Ohio Gas Co.* v. *O'Hara* (1924), 17 Ohio App. 352, 366; *Polster* v. *Griffs of America, Inc.* (1974), 184 Colo. 418, 520 P. 2d 745.

As discussed above, since there was no evidence presented that the conditions of the court were the same on August 23 as they were on August 21, evidence of the repairs made on August 23 could not be used for the purpose of establishing the condition of the tennis court at the time of the accident.

Further, evidence of the repairs was not admissible on the ground that it impeached Mr. Lee's deposition testimony that the tennis court was impervious to water. This argument is not valid because Mr. Lee's deposition was not introduced into evidence. Mr. Lee testified in person at trial that the court was *not* impervious to water. Therefore, since neither the pleadings nor the evidence raised the issue that the tennis court was impervious to water, the appellee could not use evidence of a subsequent repair to demonstrate that it was not impervious to water.

Since the condition of the tennis court on August 23 was not relevant to any of the issues tried in the case,

the admission of evidence regarding these conditions was prejudicial error. Assignments of error two and three are well taken.

*IV.* The appellant's fourth assignment of error is that the trial court refused to instruct the jury on the defense of assumption of the risk. The law in Ohio in regard to charging on assumption of the risk is well settled. In order for a trial court to be required to charge on assumption of the risk there must be evidence that the plaintiff had either actual knowledge of the danger or that the danger was so patently obvious that the party may be taken to have known of it and there must be a voluntary exposure to the hazard. *See Briere* v. *Lathrop Co.* (1970), 22 Ohio St. 2d 166, 174-175; *Ricks* v. *Jackson* (1959), 169 Ohio St. 254.

The appellant contends that the testimony of Carole Graebner, Virginia Wade, Julie Heldman and Sheldon Westervelt raised a question of fact for the jury as to whether the appellee had full knowledge of the condition; that the condition was patently dangerous to her and that she voluntarily exposed herself to the hazard. The appellant contends there was a jury question as to whether the appellee assumed the risk and it was not a question for the trial court to decide as a matter of law.

It is the appellee's position that the record clearly demonstrates that Ms. Heldman was not told and did not know of the dangers of the court and that she was free to rely on the representation made to her by Carole Graebner that the court was fixed.

To summarize, the appellant argues that a charge on assumption of the risk was warranted because Carole Graebner testified that she told all of the members of her team that the tennis court was in a dangerous condition. The appellee contends that she was never told by Carole Graebner that the court was dangerous and further that she could rely on Carole Graebner's statement before appellee's match with Virginia Wade that the court had been fixed. The appellant contends that even if this were true, the trial court should have charged on assumption of the risk

because when the appellee warmed up for twenty minutes before the Wade-Heldman match, the ball still took bad bounces which, again, raised the inference that she knew of the dangerous condition.

In the present case, we are dealing with professional athletes who play on all types of tennis court surfaces such as grass, clay, concrete, and synthetic surfaces and they are presumed to know the various risks attendant with playing on these types of courts.

The fact that Carole Graebner testified that she told all of her players that the court was dangerous raises an inference that the appellee knew of this dangerous condition. The testimony of Carole Graebner, Virginia Wade and Julie Heldman that they were all aware of the bubbles and the gaps between the seams during the practice period and on August 21, the date of the Wade-Heldman match when appellee was injured, gives further support to this inference. Further, Graebner testified that the bubbles created a dangerous condition and Wade testified that the players were afraid of getting hurt. Because the appellee is a professional tennis player, there was sufficient evidence to raise a jury question of whether she too knew that the bubbles created a dangerous condition.

A higher degree of knowledge and awareness is imputed to professional tennis players than to average non-professional tennis players as to the dangers in playing on a synthetic tennis court having obvious bubbles on the playing surface and an inference may be made that a professional player injured while using such a tennis court knew of and recognized the dangers. Therefore, there was sufficient evidence to raise a jury question as to whether she assumed the risk.

We cannot say as a matter of law that the appellee had actual knowledge of the danger or that the condition was so patently obvious that she can be taken to have known it. But, since the foregoing evidence clearly raises a question for the jury to decide, the trial court committed prejudicial error in not charging on the assumption of the risk. The fourth assignment of error is well taken.

The judgment is reversed and this case is remanded for further proceedings according to law.

*Judgment reversed*

Corrigan and Patton, JJ., concur.