OPINION
{¶ 1} Robert Combs was found guilty by a jury in the Montgomery County Court of Common Pleas of one count of aggravated robbery, and he was sentenced accordingly. Combs appeals from his conviction, alleging that his counsel was ineffective, that his conviction was against the manifest weight of the evidence, and that certain evidence was improperly admitted. *Page 2 
 {¶ 2} We conclude that Combs has failed to demonstrate that he was denied the effective assistance of counsel at trial or that his conviction was against the manifest weight of the evidence. We also conclude that the trial court did not err in finding that photographs pulled from a surveillance video were properly authenticated. Accordingly, the judgment of the trial court will be affirmed.
 I {¶ 3} The state's evidence established the following facts:
 {¶ 4} On November 23, 2007, the Friday of Thanksgiving weekend, the Circle K convenience store on Dorothy Lane in Kettering was robbed. The store clerk, Patrick Neeley, testified that around 11:30 p.m., he was standing outside smoking and talking with a friend while the store was empty. When Neeley saw a person in a hooded, red Ohio State sweatshirt approach the store, he put out his cigarette and went inside, followed by the hooded man. The man said "Get to the cash register," and when Neeley turned toward the man, he saw a knife. Neeley opened the cash register and then backed away. The hooded man took the cash out of the register and fled. Neeley immediately called the police.
 {¶ 5} David Bernard, the friend to whom Neeley was talking outside the Circle K, saw two men approach the store, one of whom was wearing a hooded, red sweatshirt with the hood up. Bernard said that he did not get a good look at the hooded man, but did see that he had a distinctive kind of nose. Bernard walked away from the store after Neeley entered with the hooded man, but moments later he heard sounds of the door smashing open and of men running, which drew his attention back to the store. Bernard saw three men come around the corner of the store, running, including the man in the red sweatshirt. The men fled in a full-size, loud, black truck. *Page 3 
 {¶ 6} Police Officer Vincent Chalecki of Sugarcreek Township was working on the evening of November 23, 2007, when he heard an alert from the Kettering Police Department for a large black pick-up truck with a loud exhaust system that had been involved in a robbery. Officer Chalecki knew that Sterling Roberts had such a vehicle, and Officer Chalecki had been looking for an opportunity to question Roberts about some other robberies. Within a couple of days of the Circle K robbery, Officer Chalecki went to Roberts' residence with a photo pulled from the Circle K surveillance camera, which he had obtained from the Kettering Police. Officer Chalecki showed the photo, which depicted the perpetrator of the Circle K robbery, to Roberts' wife, Destiny Roberts. She immediately identified the robber as Combs, using his nickname, "Nugget." Roberts also told the police that she had seen Combs in a red Ohio State sweatshirt like the one in the picture. Officer Chalecki shared this information with the Kettering Police Department.
 {¶ 7} After some additional investigation, Kettering Detective Richard Renner showed Neeley two photo arrays several days after the robbery. The first photo array included Combs and five other individuals, and the second included six different individuals. Neeley did not immediately identify anyone when he saw the first photo array. Later the same day, after Detective Renner had shown Neeley the second array, Neeley told Detective Renner that he thought the perpetrator had appeared in the first array. Detective Renner presented the first photo array again, and Neeley identified Combs as the perpetrator of the robbery. Neeley also identified Combs in the courtroom, stating the he was "positive" about the identification. Bernard was also shown the photo array but could not identify anyone; however, he testified at trial that Combs had the same type of distinctive nose as the man he had seen in the red sweatshirt at the Circle K.
 {¶ 8} On December 21, 2007, Combs was indicted on one count of aggravated robbery. He *Page 4 
pled not guilty and filed a motion to suppress Neeley's identification on the basis that it was unnecessarily suggestive and unreliable. Following a hearing, the trial court overruled the motion to suppress. Thereafter, Combs filed a Notice of Alibi, claiming that he was at the Red Roof Inn in Miamisburg at the time of the alleged robbery.
 {¶ 9} On March 18 and 19, 2008, Combs was tried by a jury. The state presented the testimony of Neeley, Bernard, Destiny Roberts, Officer Chalecki, Detective Renner, and a Kettering police officer, Officer David Warren. Combs presented the testimony of a friend, Jamie Stukenborg, who claimed that she had watched television with Combs at the Red Roof Inn on Thanksgiving weekend from Friday afternoon until about 12:30 a.m. on Saturday. Combs' sister also testified, stating that Combs had not had any transportation when he was at the hotel and had been driven by a cousin to the family function on Thanksgiving. She also testified that Combs did not have a red Ohio State sweatshirt. Finally, Combs testified on his own behalf, reiterating that he had been watching television at the Red Roof Inn at the time in question and did not have an Ohio State sweatshirt.
 {¶ 10} The jury found Combs guilty of aggravated robbery in violation on R.C. 2911.01(A)(1). He was sentenced to four years of imprisonment and ordered to pay restitution in the amount of $68.
 {¶ 11} Combs raises three assignments of error on appeal.
 II {¶ 12} Combs' first assignment of error states:
 {¶ 13} "APPELLANT'S COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESENT EXPERT TESTIMONY ON EYEWITNESS IDENTIFICATION; FAILING TO SUBPOENA WITNESSES/DOCUMENTS TO VERIFY APPELLANT'S ALIBI AND PREPARE WITNESSES; *Page 5 
AND FAILURE TO OBJECT TO IMPROPER QUESTIONING."
 {¶ 14} Combs contends that his trial counsel was ineffective in three respects: 1) he did not present expert testimony on the untrustworthiness of eyewitness identification; 2) he failed to object to Detective Renner's testimony that Destiny Roberts and Officer Chalecki had identified Combs from the video and photographs; and 3) he failed to subpoena records from the Red Roof Inn which could have substantiated Combs' claim that he had been at the hotel and had rented a movie at the time of the robbery.
 {¶ 15} To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different.Strickland v. Washington (1984), 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 688. Deficient performance means that claimed errors were so serious that the defense attorney was not functioning as the "counsel" that the Sixth Amendment guarantees. State v. Cook (1992), 65 Ohio St.3d 516, 524.
 {¶ 16} We begin with Combs' claim that counsel was ineffective in failing to offer expert testimony regarding the unreliability of eyewitness testimony. Combs has failed to establish, however, that such evidence would have affected the outcome of the trial. We can only speculate as to the effect that such expert testimony may have had on the jury's determination, and speculation cannot establish a reasonable probability that the outcome of the trial would have been different.State v. Madrigal (2000), 87 Ohio St.3d 378, 390-392. "Nothing in the *Page 6 
record indicates what kind of testimony an eyewitness identification expert could have provided. Establishing that would require proof outside the record, such as affidavits demonstrating the probable testimony. Such a claim is not appropriately considered on a direct appeal." Id. Furthermore, the supreme court has concluded that counsel's failure to call an expert and his decision to rely instead upon cross-examination does not constitute ineffective assistance of counsel.State v. Nicholas (1993), 66 Ohio St.3d 431, 436, citing State v.Thompson (1987), 33 Ohio St.3d 1, 10-11.
 {¶ 17} On this record, Combs has not established that counsel's decision not to call an expert was deficient or a reasonable probability that the outcome of the trial would have been different if counsel had called an expert on eyewitness identification. Accordingly, he has failed to show ineffective assistance in this regard.
 {¶ 18} Combs also claims that counsel was ineffective in failing to object to Detective Renner's testimony that Destiny Roberts and Officer Chalecki had identified Combs from the video and photographs presented to them. In her own testimony at trial, Destiny Roberts acknowledged that she had told the police that the man in the picture from the surveillance video looked like Combs. Any impropriety in Renner's restatement of this fact was harmless. Detective Renner's statement that Chalecki had also identified Combs from the surveillance footage was not duplicative of Chalecki's own testimony, but Combs has nonetheless failed to show prejudice arising from this statement. Accordingly, counsel's failure to object to Detective Renner's statement was harmless and did not constitute the ineffective assistance of counsel.
 {¶ 19} Finally, Combs asserts that counsel was ineffective in failing to subpoena records from the Red Roof Inn which could have substantiated Combs' claim that he had *Page 7 
been at the hotel and had rented a movie at the time of the robbery. Combs' presence at the hotel the weekend of the robbery was undisputed. If documents existed that could have established that someone purchased a movie for Combs' room around the time of the robbery, this information would have given some support to Combs' claim that he had been at the hotel. However, the defense evidence established that at least one friend of Combs had also been at the hotel, and the purchase of a movie would not have proven that Combs stayed in the room. We are unpersuaded that such evidence could have affected the outcome of the trial. Moreover, as with the expert testimony discussed above, this evidence is outside the record and, thus, cannot be considered on direct appeal.Madrigal, 87 Ohio St.3d at 390-392.
 {¶ 20} The record does not establish that Combs was denied the effective assistance of counsel. The first assignment of error is overruled.
 III {¶ 21} Combs' second assignment of error states:
 {¶ 22} "APPELLANT'S CONVICTION FOR AGGRAVATED ROBBERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE ."
 {¶ 23} Combs claims that his conviction was against the manifest weight of the evidence.
 {¶ 24} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." State v.Wilson, Montgomery App. No. 22581, 2009-Ohio-525, at ¶ 12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all *Page 8 
reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins, 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 25} Combs claims that his conviction was against the manifest weight of the evidence because a reasonable jury could not have credited Neeley's identification of him as the perpetrator. Combs points out that Neeley was "panicked," that his initial description of the suspect was "totally unremarkable" and omitted details like the Ohio State logo on the sweatshirt and gloves on the robber's hands, and that Neeley did not identify Combs when he first looked at the photo array. He also notes that he and Stukenborg testified that he was at the Red Roof Inn at the time of the robbery.
 {¶ 26} The credibility of the witnesses and the weight to be given to their testimony were matters for the jury to resolve. State v.DeHass (1967), 10 Ohio St.2d 230, 231; State v. Terry, Darke App. No. 1730, 2008-Ohio-6738, at ¶ 46. The jury did not lose its way and create a manifest injustice in this case simply because it chose to believe the state's witnesses, which it had a right to do. The jury was not required to credit Combs' testimony or that of Stukenborg. Moreover, Neeley's identification of Combs was corroborated by Destiny Roberts, who testified that the man in the surveillance video looked like Combs. Combs' conviction was not against the manifest weight of the evidence.
 {¶ 27} The second assignment of error is overruled. *Page 9 
 IV {¶ 28} Combs' third assignment of error states:
 {¶ 29} "THE TRIAL COURT ERRED IN ADMITTING STATE'S EXHIBITS 2-9 WITHOUT PROPER AUTHENTICATION."
 {¶ 30} Exhibit 1 was the surveillance video from the Circle K, and Exhibits 2-9 were still photographs that were culled from the surveillance video. Police Officer David Warren testified that he had retrieved the video and placed it in the police property room. He also testified that Exhibits 2-9 had been captured from the surveillance video and did not look like they had been altered. However, Officer Warren did not know who had created the photos from the video or when that had been done. Combs asserts that the trial court erred when it overruled his objection to Exhibits 2-9 based on the lack of proper authentication.
 {¶ 31} Evid. R. 901 requires the authentication of evidence and states that "testimony that a matter is what it is claimed to be" is sufficient to authenticate it. Evid. R. 901(B)(1). To authenticate photographs, there is no need to call the individual who took the photographs. Rather, the proponent may adduce the testimony of someone with personal knowledge of the subject of the photograph that it fairly and accurately depicts the subject at the time the photographs were taken. State v.Hannah (1978), 54 Ohio St.2d 84, 88; State v. Peine (July 21, 1989), Lake App. No. 13-088. "The rule is well settled that photographs are not objectionable as long as they are properly identified, are relevant and competent and are accurate representations of the scene which they purport to portray. A picture cannot be admitted without a proper foundation. There must be testimony that the photograph is a fair and accurate representation of that which it represents." State v. *Page 10 Griffin, Montgomery App. No. 20681, 2005-Ohio-3698, at ¶ 59, citingHeldman v. Uniroyal, Inc. (1977), 53 Ohio App.2d 21, 31.
 {¶ 32} Officer Warren testified that Exhibits 2-9 were accurate representations of the scenes on the surveillance video. Neeley testified that the surveillance video presented an accurate depiction of the store and the robbery as it occurred. Thus, there was evidence that the photos accurately represented the scene of the robbery as captured on the surveillance video, that they were relevant, and that they were properly identified. Moreover, the video itself was played for the jury. The jury was capable of assessing whether the photographs were accurate representations of the video. In our view, the trial court did not err in admitting these exhibits.
 {¶ 33} Even assuming, for the sake of argument, that the photographs were not properly authenticated, we would find that the trial court's error was harmless. An error will be deemed harmless if it did not affect the accused's substantial rights or, in other words, where there is no reasonable possibility that the error contributed to the conviction. State v. Lytle (1976), 48 Ohio St.2d 391, 403. In light of the admission of the video itself, without objection, we must conclude that the admission of the photographs, if erroneous, did not affect Combs' substantial rights.
 {¶ 34} The third assignment of error is overruled.
 V {¶ 35} The judgment of the trial court will be affirmed.
FAIN, J. and GRADY, J., concur.
Copies mailed to: *Page 11 
R. Lynn Nothstine James S. Armstrong Hon. Timothy N. O'Connell *Page 1