[Cite as *State v. Scott*, 2013-Ohio-2866.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2012-06-052 |
| | : | O P I N I O N |
| - vs - | | 7/1/2013 |
| | : | |
| JAMES SCOTT, JR., | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 05CR22106


David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Brent E. Rambo, 15 West Fourth Street, Suite 250, Dayton, Ohio 45402, for defendant-appellant


**RINGLAND, J.**

{¶ 1} Defendant-appellant, James Scott, Jr., appeals his convictions and sentence in the Warren County Common Pleas Court for various offenses of trafficking in and possession of crack cocaine and cocaine.[1] For the reasons set forth below, we affirm the convictions

---

1. We note that subsequent to appellant's case, the General Assembly enacted 2011 Am.Sub.H.B. No. 86 which eliminated the difference between crack and powder cocaine. *See State v. Solomon*, 1st Dist. No. C-120044, 2012-Ohio-5755, ¶ 10; R.C. 2925.01(X).

and sentence.

{¶ 2} On February 25, 2005, appellant was indicted on nine counts of trafficking and possession of cocaine and crack cocaine including (1) five counts of trafficking in crack cocaine in violation of R.C. 2925.03(A)(1), all felonies of the first degree, (2) one count of trafficking in crack cocaine in violation of R.C. 2925.03(A)(1), a felony of the second degree, (3) one count of possession of crack cocaine in violation of R.C. 2925.11(A), a felony of the first degree, (4) one count of possession of cocaine in violation of R.C. 2925.11(A), a felony of the first degree, and (5) one count of trafficking in cocaine in violation of R.C. 2925.03(A)(1), a felony of the first degree. Four of the counts carried major drug offender specifications pursuant to R.C. 2941.1410(A).[2]

{¶ 3} A two-day jury trial was held on October 27-28, 2005. At trial, the state called Detective Dan Schweitzer of the Warren County Drug Task Force as its first witness. Schweitzer testified that he became aware of appellant through confidential informants who stated that appellant was "a large scale cocaine, crack cocaine drug dealer in Warren County."

{¶ 4} Schweitzer further testified regarding several drug transactions made between appellant and a confidential informant. During each transaction, the confidential informant wore a wireless transmitter that allowed Schweitzer to monitor the transaction. In each transaction, the drugs were exchanged for "prerecorded money" that was provided by the Warren County Drug Task Force.[3] Each transaction between appellant and the confidential informant took place at either appellant's residence, located at "280 West Pekin Road,

2. We further note that 2011 Am.Sub.H.B. No. 86 altered Major Drug Offender specifications in a manner not relevant to this case. *See* R.C. 2929.14(B)(3).

3. Lieutenant Steve Arrasmith with the Warren County Drug Task Force later testified that he was in charge of issuing "confidential funds, or 'buy money,'" to Schweitzer and that "every bill" issued by the Warren County Drug Task Force was photocopied so that the serial numbers of the bills could later be tracked and potentially matched to bills recovered at the end of the investigation.

Lebanon, Ohio" (the "Pekin Road Residence"), or at an "abandoned residence" located on "Robinson Vail Road" (the "Robinson Vail Residence"). After several drug transactions occurred between appellant and the confidential informant, Schweitzer began participating in the transactions acting in an undercover capacity. Schweitzer then testified about five separate drug transactions involving appellant.

{¶ 5} The first transaction occurred on November 16, 2004 at the Robinson Vail Residence wherein Schweitzer purchased a "half ounce" of crack cocaine from appellant for $400. Brooke J. Dunn, a forensic chemist with the Miami Valley Regional Crime Laboratory, would later testify that the substance purchased by Schweitzer was 13.43 grams of crack cocaine.

{¶ 6} The second transaction occurred on November 29, 2004 at the Robinson Vail Residence wherein Schweitzer purchased "an ounce of crack cocaine" from appellant for $780. Dunn later testified that the substance purchased by Schweitzer was 26.89 grams of crack cocaine.

{¶ 7} The third transaction occurred on December 8, 2004 at the Pekin Road Residence wherein the confidential informant purchased "2 ounces of crack cocaine" from appellant's wife. Schweitzer explained that appellant was "out of state, in Florida, at a funeral of his family member." Therefore, appellant arranged for his wife to supply Schweitzer with the crack cocaine and Schweitzer arranged for the confidential informant to retrieve the drugs. Dunn later testified that the substance purchased by the confidential informant was 26.73 grams of crack cocaine.

{¶ 8} The fourth transaction occurred on December 21, 2004 at the Robinson Vail Residence wherein Schweitzer purchased "one ounce of crack cocaine" for $765 from appellant. Dunn later testified that the substance purchased by Schweitzer was 26.73 grams of crack cocaine.

{¶ 9} The fifth transaction occurred on December 27, 2004 off of Manchester Road near the Robinson Vail Residence in Schweitzer's vehicle. Schweitzer testified that he purchased five ounces of crack cocaine from appellant for $3,600. Dunn later testified that the substance purchased by Schweitzer was 134.82 grams of crack cocaine.

{¶ 10} After the fifth transaction, police followed appellant back to his Pekin Road Residence where he was placed under arrest and his house was searched. During the search several items were seized including two handguns, a safe containing paperwork belonging to appellant and $46,003 in cash, surveillance equipment, cutting agents for cocaine, "miscellaneous drug paraphernalia," and both crack cocaine and cocaine.[4] Dunn later testified that the multiple packages of substances confiscated from appellant's Pekin Road Residence contained 1,110.37 grams of cocaine and 445.20 grams of crack cocaine.

{¶ 11} After the case was submitted to the jury for deliberation, but prior to the returning of a verdict, appellant absconded.[5] Nevertheless, on October 28, 2005, the jury returned a verdict of guilty against appellant on all nine counts. Seven years later, appellant was apprehended during a traffic stop in Dayton, Ohio and returned to Warren County for sentencing. On May 30, 2012, appellant was sentenced to a total of 18 years in prison.

{¶ 12} From his convictions and sentence, appellant appeals, raising three assignments of error.

{¶ 13} Assignment of Error No. 1:

{¶ 14} APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE AND APPELLANT WAS PREJUDICED THEREBY.

{¶ 15} In his first assignment of error, appellant asserts that his 2005 trial counsel was

---

4. Lieutenant Arrasmith later testified that $1,600 of the $46,003 found in the safe matched the serial numbers of "buy money" provided by the Warren County Drug Task Force during the investigation into appellant.

5. During trial appellant was out on bond but subject to electronic monitoring.

ineffective for numerous reasons. Specifically, appellant contends that his trial counsel was ineffective for failing to object to (1) "full areas of hearsay testimony," (2) the admission and discussion of unauthenticated photographs, and (3) prejudicial speculation by detectives.

{¶ 16} "To establish a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's actions were outside the wide range of professionally competent assistance, and that prejudice resulted by reason of counsel's actions." *State v. Dominguez*, 12th Dist. No. CA2011-09-010, 2012-Ohio-4542, ¶ 19, citing *State v. Ullman*, 12th Dist. No. CA2002-10-110, 2003-Ohio-4003, ¶ 43; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed ineffective unless appellant demonstrates that "counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different. *Id.*; *Strickland* at 688; *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989). "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome of the proceeding.'" *State v. Fields*, 102 Ohio App.3d 284 (12th Dist.1995), quoting *Strickland* at 694. "A defendant bears the burden of demonstrating ineffective assistance of counsel." *Dominquez* at ¶ 19, citing *State v. Bishop*, 12th Dist. No. CA97-07-081, 1998 WL 102994, * 1 (Mar. 9, 1998); *State v. Hamblin*, 37 Ohio St.3d 153, 155-156 (1988)

**Hearsay Testimony**

{¶ 17} Appellant first contends trial counsel was ineffective in failing to object to several hearsay statements made during the course of Schweitzer's testimony. Specifically, appellant argues trial counsel was ineffective for failing to object to hearsay statements regarding (1) the initiation of the investigation into appellant, (2) the confidential informant, and (3) a bill of lading found in appellant's Pekin Road Residence.

1. Initiation of Investigation

{¶ 18} Appellant claims trial counsel was ineffective for failing to object to Schweitzer's testimony that the Warren County Drug Trask Force began investigating appellant after an unidentified individual contacted the police claiming that appellant was a large-scale crack cocaine dealer. Specifically, appellant takes issue with the following exchange:

> STATE: And how did [appellant] first come on the radar with the Warren County Drug Task Force?
>
> SCHWEITZER: I met with Detective Back, who had met with a source of information. This source of information provided a lot of details in reference to [appellant,] including where he lives, vehicles that he drove, motorcycles that he had, and that he had not worked in some time, and that he was a large scale cocaine, crack cocaine drug dealer in Warren County.

{¶ 19} According to Evid.R. 801(C), hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *See State v. Penwell*, 12th Dist. No. CA2010-08-019, 2011-Ohio-2100, ¶ 11. The hearsay rule provides that an out-of-court statement is inadmissible at trial unless it falls under one of the exceptions to the rule. *Id.*; Evid.R. 801-804.

{¶ 20} However, out-of-court statements may be admissible as non-hearsay if they are used to explain a witness's actions. *Penwell* at ¶ 13. "As the Ohio Supreme Court has stated, 'it is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed.'" *Id.*, quoting *State v. Thomas*, 61 Ohio St.2d 223, 232 (1980). "'For example, where statements are offered to explain an officer's conduct while investigating a crime, such statements are not hearsay.'" *Id.*, quoting *State v. Blevins*, 36 Ohio App.3d 147, 149 (10th Dist.1987).

{¶ 21} In his testimony, Schweitzer did not relay any out-of-court statements to the jury but, rather, discussed why the Warren County Drug Task Force had begun an investigation

of appellant. The statements of the "source of information" were not used by Schweitzer to prove the truth of the matter asserted—that appellant was a large scale drug dealer—but to explain why an investigation was initiated. Therefore, the testimony is not inadmissible hearsay and trial counsel was not ineffective for failing to object to the testimony.

## 2. Confidential Informant

{¶ 22} Appellant next argues trial counsel was ineffective in failing to object to "full areas of hearsay testimony" by Schweitzer regarding drug transactions that occurred between appellant and the confidential informant on October 26, 2004, November 8, 2004, and December 8, 2004. Specifically, appellant takes issue with testimony from Schweitzer that the confidential informant "purchased" crack cocaine from "Mr. Scott." Appellant claims that the only way Schweitzer could have known that the confidential informant actually *purchased* drugs from *appellant* was if the confidential informant told this to Schweitzer. As the statements of the confidential informant would be inadmissible hearsay, appellant contends that trial counsel should have objected.

{¶ 23} In this case, trial counsel did, in fact, object and request a "continuing objection" as to all testimony regarding the confidential informant. When Schweitzer first began to discuss the confidential informant, trial counsel objected stating, "The confidential informant is not going to appear. We would object to any hearsay as to what Detective Schweitzer has to say." This objection was overruled by the trial court. After further testimony by Schweitzer, the following exchange took place:

> TRIAL COUNSEL: Your honor, we ask for a continuing objection on the confidential informant.
>
> THE COURT: What the confidential informant did?
>
> TRIAL COUNSEL: No. Any discussion about the confidential informant if the confidential informant is not going to

- 7 -

appear.

THE COURT: Is your objection as to what the confidential informant did?

TRIAL COUNSEL: Correct.

THE COURT: What he did?

TRIAL COUNSEL: Yes.

THE COURT: On what basis is that objectionable?

TRIAL COUNSEL: It's tantamount to hearsay because—

THE COURT: As to what the detective observed the confidential informant to do (sic)?

TRIAL COUNSEL: Well, when he was making the buy, [Schweitzer] was obviously not there.

THE COURT: The objection is overruled.

{¶ 24} Appellant claims these objections were "not made articulately enough to glean exactly what the objection asserted" and, therefore, trial counsel was ineffective. However, from our reading of the record, trial counsel's objections clearly argue that Schweitzer's testimony regarding the confidential informant is hearsay. There is no requirement of how well an objection must be articulated so long as trial counsel's conduct does not fall below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 668. In this case, trial counsel's objections to the admission of testimony regarding the confidential informant did not fall below an objective standard of reasonableness for not being "articulate enough." The arguments appellant is making before this court are synonymous to the arguments addressed by trial counsel to the trial court. Therefore, as trial counsel did object to testimony regarding the confidential informant, we find appellant's ineffective assistance of counsel argument without merit.

{¶ 25} Nevertheless, even if trial counsel had failed to make said objections, we would

still find that trial counsel's failure was not ineffective assistance of counsel, as Schweitzer's testimony did not contain hearsay statements relating to the confidential informant. As noted above, hearsay is a statement made outside of a trial or hearing and offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Generally, hearsay is not admissible unless the statement comes under some exception to the hearsay rule. Evid.R. 802.

{¶ 26} In this case, Schweitzer never testified as to statements made by or to the confidential informant. Rather, Schweitzer explained that, prior to each drug transaction with appellant, he and another officer patted down the confidential informant, put a wireless transmitter on his person, and gave the confidential informant "prerecorded buy money." Schweitzer then testified that he observed the confidential informant drive to either the Pekin Road Residence or the Robinson Vail Residence and enter the residence. After the confidential informant entered the residence and was no longer visible to Schweitzer, he could still listen to the confidential informant through the wireless transmitter. Detective Michael Back of the Franklin Police Department confirmed during his testimony that officers could listen through the wireless transmitter to the transactions as they occurred and that he and Schweitzer listened to the December 8, 2004 transaction while it took place. Schweitzer further testified that he knew appellant's voice and was able to identify it based upon his personal contact with appellant and through telephone conversations. Finally, Schweitzer testified that after each drug transaction he would meet with the confidential informant and retrieve any drugs as well as the wireless transmitter. Thus, Schweitzer's testimony related to what he visibly and aurally observed during the October 26, 2004, November 8, 2004, and December 8, 2004 drug transactions involving the confidential informant.

{¶ 27} From our review of the record, it is clear that Schweitzer testified regarding details that he visibly saw or heard over the wireless transmitter. Schweitzer never testified as to what the confidential informant said or attempted to use the confidential informant's out-

of-court statements to prove the truth of the matter asserted. As noted by the trial court after one of trial counsel's objections to this alleged hearsay, "what the detective observed the confidential informant" do is not hearsay.

{¶ 28} Therefore, we find that trial counsel was not ineffective for failing to object to statements made by Schweitzer as trial counsel did object to this testimony and Schweitzer's testimony regarding the confidential informant did not include hearsay.

### 3. Bill of Lading

{¶ 29} Appellant additionally claims that trial counsel was ineffective in failing to object to testimony regarding a bill of lading found in appellant's Pekin Road Residence. Specifically, appellant argues that the following testimony should have been objected to by trial counsel:

> SCHWEITZER: This is a J&S Trucking bill of lading. It basically is where [appellant] had the BMW that he purchased from Texas shipped from Texas to his residence at 280 West Pekin Road, a BMW 318i, a 2000. It has the VIN. And has that it's paid in full, $550, to have it delivered from Texas to Ohio.

Appellant contends that, as the bill of lading had not been authenticated by its maker, or authenticated as a business record, and was used as an out-of-court statement to prove the truth of the matter asserted—that appellant had a BMW delivered from Texas to his home in Ohio—the evidence was inadmissible hearsay.

{¶ 30} Schweitzer's testimony regarding the bill of lading was not offered to prove that appellant did, in fact, purchase a 2000 BMW 318i and shipped it from Texas to Ohio. Rather, the testimony was elicited to demonstrate that appellant earned so much money trafficking in cocaine and crack cocaine that he was able to afford expensive vehicles including the BMW. Thus, Schweitzer's testimony was not hearsay, as it was not used to prove the truth of the matter asserted.

{¶ 31} Furthermore, even if Schweitzer's testimony did constitute hearsay, appellant has failed to demonstrate how the outcome of his trial would have been different had trial counsel objected and testimony regarding the bill of lading been excluded. During the search of the Pekin Road Residence, appellant had a conversation with Special Agent Dwight Ausbacher. During this conversation, appellant admitted that he had been selling cocaine for the past 11 years and that all of the vehicles at the Pekin Road Residence, including the BMW, were purchased with funds acquired during the sale of cocaine. Based upon this additional evidence, we find that the outcome of the jury trial would not have been different had any testimony regarding the bill of lading been objected to and such testimony excluded from evidence.

{¶ 32} Appellant additionally makes a one-sentence argument that certain testimony by Schweitzer regarding non-indicted drug transactions should have been excluded at trial under Evid.R. 404(B) and that trial counsel was ineffective in failing to raise this argument.[6] However, as appellant fails to demonstrate that the outcome of his trial would have been different had this evidence been excluded, we find this argument unpersuasive.

{¶ 33} Based upon the foregoing, we conclude that trial counsel was not ineffective in failing to object to hearsay testimony at trial, as trial counsel *did* object to said testimony, the testimony was not hearsay used to prove the truth of the matter asserted, and appellant has

---

6. Evid.R. 404(B) provides:

> **Other crimes, wrongs or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

not demonstrated that the outcome of the trial would have been different but for trial counsel's conduct.

**Admission of Unauthenticated Photographs**

{¶ 34} We now turn to appellant's argument that trial counsel was ineffective in failing to object to the admission and discussion of photographs that were not properly authenticated pursuant to Evid.R. 901. Specifically, appellant contends that trial counsel improperly failed to object to the admission of a photograph of "buy money" found on the front seat of appellant's Chevrolet Extreme truck and a photograph of a handgun found in appellant's bedroom closet. According to appellant, had trial counsel objected, these photographs would not have been admitted or discussed at trial and, therefore, the resulting verdict would have been different.

{¶ 35} Pursuant to Evid.R. 901(A), the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The "threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity." *State v. Freeze*, 12th Dist. No. CA2011-11-209, 2012-Ohio-5840, ¶ 65, citing *State v. Easter*, 75 Ohio App.3d 22, 25 (4th Dist.1991). "Instead, the state only needs to demonstrate a 'reasonable likelihood' that the evidence is authentic." *Id.*, citing *State v. Thomas*, 12th Dist. No. CA2010-10-099, 2012-Ohio-2430, ¶ 15. Testimony of a witness with knowledge that the "matter is what it is claimed to be" is sufficient to properly authenticate an item pursuant to Evid.R. 901(A). Evid.R. 901(B)(1).

{¶ 36} Photographic and video evidence is generally authenticated in two ways. Pertinent to this case, a photograph may be authenticated by having a person with knowledge state that the photograph represented a "fair and accurate depiction of the actual item at the time the picture was taken." *Id.* at ¶ 66, citing Evid.R. 901(B)(1); *Penwell*, 2011-

Ohio-2100 at ¶ 60. "In authenticating evidence through this method, there is no need to call the witness who took the photographs as long as a witness with knowledge can testify that the photograph is a fair and accurate depiction." *Freeze* at ¶ 66; *State v. Combs*, 2d Dist. No. 22712, 2009-Ohio-1943; *State v. Mick*, 12th Dist. No. CA2011-08-017, 2012-Ohio-1598.

### 4. Photograph of "Buy Money"

{¶ 37} First, appellant contends that trial counsel was ineffective for failing to object to the admission of an unauthenticated photograph allegedly depicting "buy money" from a transaction between Schweitzer, acting undercover, and appellant.

{¶ 38} Schweitzer testified that, on December 27, 2004, he provided appellant $3,600 in prerecorded money wrapped in a rubber band in exchange for five ounces of cocaine. After the transaction, Schweitzer observed appellant enter his vehicle, a "white Chevy Extreme truck," and drive to his Pekin Road Residence where appellant was arrested. Upon arriving at the Pekin Road Residence, Schweitzer testified that he observed the money he had given appellant "laying in the front passenger seat of the white Chevy Extreme truck exactly how I handed it to him, in a rubber band, just laying on the seat." Schweitzer was then shown a photograph of the money and testified that the photograph was a true and accurate photograph of the "money laying on the front seat of [appellant's] Chevy truck."

{¶ 39} Based upon this testimony, the photograph of the money was properly authenticated by a witness with knowledge that the photograph is a true and accurate depiction of what it claims to be. Therefore, trial counsel was not ineffective in failing to object to the admission of the photograph of the "buy money," as the objection would have been overruled.

### 5. Photograph of Handgun

{¶ 40} Appellant further argues trial counsel was ineffective for failing to object to the admission of an unauthenticated photograph of a handgun found near a safe in appellant's

bedroom closet. At trial Schweitzer testified that, on December 27, 2004, a search warrant was executed at appellant's Pekin Road Residence. Schweitzer stated that he "was the signer of the search warrant" and that he "took control of the scene and also of the evidence that was seized." That evidence included an "L-380" handgun that "was located in the master bedroom closet by the safe." Specifically, Schweitzer testified that a photograph "was taken of the handgun, where it was found, recovered in the residence, in the master bedroom closet, laying beside the safe." Schweitzer further stated that the photograph was a true and accurate depiction of the scene.

{¶ 41} Based upon this testimony, the photograph of the handgun was properly authenticated by a witness with knowledge that the photograph is a true and accurate depiction of what it claims to be. Therefore, trial counsel was not ineffective in failing to object to the admission of the photograph of the handgun, as the objection would have been overruled

**Prejudicial Speculation by Detectives**

{¶ 42} Finally, appellant alleges that trial counsel was ineffective for failing to object to testimony by Schweitzer wherein the detective "speculates" that items found in appellant's Pekin Road Residence were "cutting agents" and drug paraphernalia used in the sale of cocaine. Specifically, appellant objects to the following line of testimony regarding a bag found in appellant's residence:

> STATE: Okay. And were you able to determine what was in that bag?
>
> SCHWEITZER: I think the crime lab did an analysis and found no controlled substance. A cutting agent for cocaine is what I believe it to be.
>
> STATE: All right. With your experience and training in the drug trafficking area, and in dealing with cocaine or crack cocaine, could you tell the jury what a

cutting agent is?

SCHWEITZER: A cutting agent is something that is used to double the volume of cocaine, thus making more profit. Let's say, for example, that you buy a kilo of cocaine and you add a cutting agent to it so you can turn it into could [sic] 2 kilos of cocaine. So, basically, when you start selling it, breaking it down, you're making a lot more profit.

Most people use baby formula or an inositol powder, which is a dietary supplement. That's what most of the time is used. Baking soda sometimes.

Appellant further takes issue with additional testimony from Schweitzer that a scale found in appellant's residence was "used to weigh out marijuana and cocaine."

{¶ 43} Evid.R. 701 provides that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinion or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony of the determination of a fact in issue." The first requirement of Evid.R. 701 is a restatement of the firsthand knowledge rule, Evid.R. 602, which requires that a witness not testify to any matter "unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." Evid.R. 602; *State v. Kehoe*, 133 Ohio App.3d 591, 602-04 (12th Dist.1999).

{¶ 44} "To satisfy the first requirement of Evid.R. 701, it must be determined whether the opinion of the lay witness is one that a rational person would form on the basis of the observed facts." (Internal quotations omitted.) *Kehoe* at 603, citing *State v. Mulkey*, 98 Ohio App.3d 773, 784 (10th Dist.1994); *Lee v. Baldwin*, 35 Ohio App.3d 47, 49 (1st Dist.1987). "The second requirement of Evid.R. 701 mandates that 'the opinion must assist the trier of fact in understanding the testimony of the witness or in determining a fact in issue.'" *Id.*, citing *State v. Sibert*, 98 Ohio App.3d 412, 426 (4th Dist.1994).

- 15 -

{¶ 45} Schweitzer testified that he believed cuttings agents were found in a bag at appellant's residence. Schweitzer also testified, based upon his experience and training in the drug trafficking area, about what he believed a cutting agent to be, including providing the jury with examples. Later, Schweitzer testified that a "triple beam scale" was found at appellant's residence and that such a scale is "used to weigh out marijuana and cocaine." Schweitzer further explained that "to have a triple beam scale that size, you would have to be a pretty large quantity cocaine or crack dealer. It's used as a criminal tool to weigh the amounts of cocaine and crack that you're selling."

{¶ 46} As to these matters, Schweitzer testified as to how he interpreted the evidence collected from appellant's Pekin Road Residence based upon his eight and one-half years of experience in law enforcement with the Warren County Drug Task Force. He testified that, as a member of the task force, he is involved in surveillance, working with confidential informants, and working undercover to "buy drugs in the Warren County community."

{¶ 47} Schweitzer demonstrated personal knowledge of these observed facts that assisted the jury in better understanding the meaning and significance of cutting agents and triple beams scales. Therefore, Schweitzer's testimony was not prejudicially speculative and trial counsel was not ineffective in failing to object to said testimony.

{¶ 48} Nevertheless, even if a portion of Schweitzer's testimony was speculative, and therefore should not have been admitted, appellant has failed to demonstrate how the admission of such evidence was prejudicial, as the outcome of the trial would have remained the same based upon the overwhelming evidence against him.

{¶ 49} At trial, the state presented eyewitness testimony from Schweitzer that he personally made four purchases of crack cocaine from appellant. Schweitzer further testified that he observed, visibly and aurally, the sale of crack cocaine from appellant to a confidential informant. The state presented additional evidence from Dunn, the forensic

chemist for the Miami Valley Regional Crime Laboratory, that over 1,500 grams of cocaine and crack cocaine were seized from appellant's Pekin Road Residence and that the crack cocaine purchased by Schweitzer and the confidential informant was crack cocaine.

{¶ 50} In addition, Special Agent Ausbacher testified that while appellant's residence was being searched on December 27, 2004, appellant told Ausbacher that he had been selling cocaine for the past 11 years, that there was cocaine in the Pekin Road Residence, and that the approximately $40,000 that was found in the safe in the bedroom closet was made by appellant "from selling cocaine." Appellant also told Ausbacher that all of the vehicles at the Pekin Road Residence were purchased with money made selling cocaine.

{¶ 51} Based upon the overwhelming evidence against appellant presented at trial, our confidence in the outcome of the trial is not undermined. We find that it is not reasonably probable that, had trial counsel objected to Schweitzer's statements, the result of appellant's jury trial would have been different.

{¶ 52} Therefore, based upon the foregoing, we find that trial counsel was not ineffective in the representation of appellant and appellant was not prejudiced by said representation. Accordingly, appellant's first assignment of error is overruled.

{¶ 53} Assignment of Error No. 2:

{¶ 54} THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR CRIMINAL RULE 29 ACQUITTAL WHEN VENUE WAS NOT ESTABLISHED AS TO COUNTS ONE (1) THROUGH FIVE (5) OF THE INDICTMENT.

{¶ 55} In his second assignment of error, appellant argues that the trial court erred in overruling his Crim.R. 29 motion for acquittal, as venue was never proven for the first five counts of the indictment.

{¶ 56} "When reviewing the trial court's denial of a motion for acquittal under Crim.R. 29, this court applies the same test as it would in reviewing a challenge based upon the

sufficiency of the evidence to support a conviction." *State v. Birt*, 12th Dist. No. CA2012-02-031, 2013-Ohio-1379, ¶ 26, citing *State v. Smith,* 12th Dist. Nos. CA2012-02-017 and CA2012-02-018, 2012-Ohio-4644, ¶ 25. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.,* quoting *State v. Jenks,* 61 Ohio St.3d 259, (1991), paragraph two of the syllabus.

{¶ 57} "Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state." *State v. Stone*, 12th Dist. No. CA2007-11-132, 2008-Ohio-5671, ¶ 16, citing *State v. Meridy*, 12th Dist. No. CA2003-11-091, 2005-Ohio-241, ¶ 12. "Venue is not a material element of the offense, yet it is a fact that must be proved beyond a reasonable doubt, unless it is waived by the defendant." *Birt* at ¶ 27, citing *State v. Headley*, 6 Ohio St.3d 475, 477 (1983). "[I]t is not essential that the venue of the crime be proved in express terms, provided it be established by all the facts and circumstances, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the affidavit." *Id.* at ¶ 27, citing *State v. Behanan,* 12th Dist. No. CA2009-10-266, 2010-Ohio-4403 ¶ 19; *State v. Chintalapalli,* 88 Ohio St.3d 43, 45 (2000).

{¶ 58} As to Counts One through Five, appellant argues the state failed to prove that venue was proper in Warren County because "all that was offered by Detective Schweitzer at trial, as to the location of the alleged drug transactions, was, at most, a street address."

{¶ 59} As to Counts One, Two, and Four, Schweitzer testified that he conducted controlled buys with appellant at the Robinson Vail Residence. When asked if the "Robinson Vail address that there were some transactions at" was located "in Warren County, Ohio," Schweitzer replied "Yes, it is." Therefore, venue was established for Counts One, Two, and Four in Warren County, Ohio.

{¶ 60} With respect to Count Three, Schweitzer testified that the confidential informant

conducted a controlled buy with appellant's wife at the Pekin Road Residence. When asked if the Pekin Road Residence "where a transaction occurred" was in Warren County, Ohio, Schweitzer responded, "Yes, it is." Therefore, venue was established for Count Three in Warren County, Ohio.

{¶ 61} As to Count Five, Schweitzer testified that he conducted a controlled buy with appellant on Manchester Road just off of Robinson Vail Road. Specifically, he stated that the transaction occurred in his vehicle when he was parked on Manchester Road, "in the main stretch of a road in Warren County." As Schweitzer testified that he turned off of Robinson Vail Road onto Manchester Road, and that Robinson Vail Road is located in Warren County, Ohio, the evidence is sufficient to establish that Manchester Road is also located in Warren County, Ohio. Therefore, venue was established for Count Five in Warren County, Ohio.

{¶ 62} Thus, the trial court did not err in overruling appellant's Crim.R. 29(A) motion for acquittal of Counts One through Five on the basis of venue. Accordingly, appellant's second assignment of error is overruled.

{¶ 63} Assignment of Error No. 3:

{¶ 64} THE TRIAL COURT ERRED IN IMPOSING A SENTENCE ON COUNT ONE (1) THAT EXCEEDED THE APPLICABLE SENTENCING RANGE FOR THE CONVICTION.

{¶ 65} In his third assignment of error, appellant contends the trial court improperly sentenced appellant on Count One of the indictment to a sentence that was beyond the applicable statutory sentencing range. Specifically, appellant argues that 2011 Am.Sub.H.B. No. 86 ("H.B. 86"), which went into effect after appellant was convicted but prior to appellant's sentence, mandates that appellant could only receive a maximum sentence of 36 months in prison, as the charge in Count One would have dropped to a felony of the third

degree. [7]

**{¶ 66}** In 2005, appellant was indicted and convicted of Count One, trafficking in crack cocaine, in violation of R.C. 2925.03(A)(1), a felony of the second degree in that the amount of crack cocaine exceeded 10 grams but was less than 25 grams. After the indictment and conviction, "the General Assembly enacted H.B. 86, which implemented changes to Ohio's criminal and juvenile laws." *State v. Solomon*, 1st Dist. No. C-120044, 2012-Ohio-5755, ¶ 10. Relevant to this case, "H.B. 86 amended several statutes to eliminate the difference between crack and powder cocaine, which are both now included in the definition of 'cocaine.'" *Id.*, citing R.C. 2925.01(X).

**{¶ 67}** The amendments to R.C. 2925.03, the statute that criminalizes trafficking in drugs, had the effect of lowering the level of an offense similar to that charged in Count One from a second-degree felony to a third-degree felony, subjecting a defendant to reduced sanctions. *See* former R.C. 2925.03(A) and amended R.C. 2925.03(A). Instead of facing a prison term of two to eight years, a defendant would be subject to of only nine to 36 months. *See* R.C. 2929.14(A)(3)(b).

**{¶ 68}** Appellant contends the trial court erred by failing to impose a reduced sentence consistent with the reduced penalties enacted by H.B. 86. He argues that, because he was sentenced after the effective date of H.B. 86, R.C. 1.58(B) required the trial court to impose a sentence as if he had been convicted of a third-degree felony. Appellant does not argue that the *classification* level of Count One should change from a second-degree felony to a third-degree felony and we decline to address the issue at this time.[8]

---

7. H.B. 86 became effective on September 30, 2011.

8. This issue is currently pending before the Ohio Supreme Court. *State v. Taylor*, 134 Ohio St.3d 1466, 2013-Ohio-553 (accepting the certified conflict of whether "[a] defendant [may] benefit from a decrease in a classification and penalty of an offense by the General Assembly [that becomes effective] between the time the defendant committed the offense and the time of his sentencing on that offense[.]").

{¶ 69} The General Assembly expressly provided in Section 3 of H.B. 86 when the amendments to a statute would be applicable:

> The amendments to sections * * * 2925.03 * * * of the Revised Code * * * that are made in this act apply to a person who commits an offense involving * * * cocaine * * * on or after the effective date of this act [September 30, 2011] and to a person to whom division (B) of section 1.58 of the Revised Code makes the amendments applicable.

{¶ 70} R.C. 1.58(B) identifies which law to apply when a statute is amended after the commission of a crime, but before sentence is imposed:  "If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended."  *See State v. Arnold*, 2d Dist. No. 25044, 2012-Ohio-5786, ¶ 9.

{¶ 71} Appellant committed the offense of trafficking in drugs specified in Count One on November 16, 2004.  H.B. 86 went into effect on September 30, 2011. The trial court sentenced appellant on May 30, 2012.  Because appellant committed the offense prior to H.B. 86's effective date, but was sentenced after the effective date, he would normally be entitled to the reduced penalty for a third-degree felony based upon R.C. 1.58(B) and H.B. 86's amendments to R.C. 2925.03.  *State v. Steinfurth*, 8th Dist. No. 97549, 2012-Ohio-3257, ¶ 15.  *See also Solomon*, 2012-Ohio-5755 at ¶ 52-54; *Arnold*, 2012-Ohio-5786 at ¶ 10; *State v. Gillespie*, 5th Dist. No. 2012-CA-6, 2012-Ohio-3485, ¶ 8; *State v. Boltz*, 6th Dist. No. WD-12-012, 2013-Ohio-1830, ¶ 11; *State v. Limoli,* 10th Dist. No. 11AP-924, 2012-Ohio-4502, ¶ 61-64; *State v. Cefalo,* 11th Dist. No. 2011-L-163, 2012-Ohio-5594, ¶ 15.

{¶ 72} Nevertheless, in good conscious, we cannot apply H.B. 86 to Count One, as such an application would give appellant the benefit of a lower sentence—at least five years lower—due to his conduct of fleeing and absconding for seven years.  To allow appellant to flee from the law for seven years only to return and receive a more beneficial sentence due to a change in the law is absurd and would promote this type of conduct in other defendants.

We therefore hold that H.B. 86 does not apply to those defendants who were convicted prior to the effective date of the bill and then purposely avoided sentencing until after the effective date. We find support for our conclusion in those cases addressing the tolling of the statute of limitations when a defendant purposely avoids prosecution and in similar cases from other states.

{¶ 73} The Eighth Appellate District addressed the tolling of the statute of limitations for the filing of a criminal indictment when the accused purposely avoids prosecution. *State v. Bess*, 126 Ohio St.3d 350, 2010-Ohio-3292, ¶ 1. In *Bess*, upon learning about an investigation against him for sexually abusing his wife's minor daughter, the defendant "began making plans to change his identity and leave town." *Id*. at ¶ 5. The defendant fled town in 1989 but was still indicted by a grand jury in the same year. *Id*. at ¶ 7. A capias was eventually issued for his arrest, but the defendant "successfully concealed his identity and his whereabouts until March 5, 2007," when he was arrested approximately 18 years after being indicted. *Id*. After the defendant was apprehended, he was also indicted for sexually abusing his wife's minor son. *Id*. at ¶ 8-9. The defendant sought to dismiss the indictment against the son, arguing that the six-year statute of limitations had expired. *Id*. at ¶ 11. The case was eventually appealed to the Ohio Supreme Court. In interpreting the General Assembly's intent behind R.C. 2901.13(G), the tolling statute, the Court held that "the period of limitations *shall not run* during any time when the accused purposely avoids prosecution." (Emphasis sic.) *Id*. at ¶ 31. Specifically, the Supreme Court stated that the General Assembly could not have intended to "require the state to prove the accused's specific intent in absconding, nor did it intend to toll the statute of limitations as to crimes known to the state but not toll it as to crimes unknown to the state. If we interpreted the statute otherwise, an accused would benefit from absconding from prosecution of crimes unknown to the state. This would be an illogical interpretation of the statute." *Id*.

- 22 -

{¶ 74} Similarly, the Supreme Court for New York County addressed the issue of a defendant attempting to benefit from his misconduct. *People v. Ortega*, 12 Misc.3d 1182(A), 824 N.Y.S.2d 765 (Sup. Ct.2006). The defendant in *Ortega* was arrested by two police officers for possession of cocaine after the traffic stop of a car in which the defendant was a passenger. *Id.* at * 1. A motion to suppress the traffic stop was denied and, in 1993, the defendant pled guilty. *Id.* The defendant failed to appear for his sentencing hearing and "remained a fugitive until September 14, 2000." *Id.* In 2002, the defendant was sentenced on the original 1993 guilty plea but moved to vacate his judgment of conviction after learning that the two arresting officers in his case had been involved in a "corruption scandal." *Id.* The district attorney denied knowing about the alleged wrongdoing of the police officers when the defendant entered his guilty plea, but knew about the police officers' wrongdoing before the defendant was sentenced. *Id.* at * 2. Thus, the defendant sought to vacate his judgment, as he was prevented from "moving before sentencing to reopen the suppression hearing on the ground of new evidence." *Id.* The court found, however, that it could not "overlook that [the] defendant had absconded long before the District Attorney had obtained that information, and that the defendant would have had no right to move to reopen the suppression hearing if he had been sentenced in 1993." *Id.* Specifically, the New York County Supreme Court provided:

> In this case, to allow defendant to reopen his suppression motion on the ground of newly-discovered evidence would be to reward him for not returning to court to be sentenced. If defendant had returned to court in 1993 and been sentenced, the arresting officers' corrupt conduct would have been discovered too late to provide a legal basis * * * to reopen his suppression hearing. The only reason that defendant had not been sentenced on his guilty plea when the District Attorney learned about the officers' corrupt conduct was because he had delayed his sentencing by absconding.

{¶ 75} As "public policy prohibits a defendant from benefitting from his own misconduct," and in order to "avoid the unjust result of rewarding [a] defendant for having

absconded," the court denied the defendant's motion to vacate his judgment. *Id.* at * 3-4, citing *People v. Sanchez,* 65 N.Y.2d 436, 443, 492 N.Y.S.2d 577 (1985) ("Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong"), quoting *Faulk v. United States,* 15 App. DC 446, 460 (1899).

{¶ 76} Here, the General Assembly provided that the benefit of a reduced sentence will apply to those defendants who committed the offense prior to the effective date of H.B. 86 but were sentenced afterward. Yet, just as in *Bess* and *Ortega*, the only reason appellant could receive the benefit of a sentencing reduction was due to his absconding. Appellant would have no right to seek the benefits of H.B. 86 had he been sentenced in 2005 when he was convicted.

{¶ 77} To allow H.B. 86 to apply to an offender who avoids sentencing until after the effective date would be "illogical" and allow an offender to "benefit from absconding." We agree with the *Ortega* court that public policy prohibits a defendant from "benefiting from his own misconduct."[9] Therefore, in order to "avoid the unjust result" of rewarding appellant for absconding by reducing his sentence on Count One from eight years to a maximum of 36 months, we find that H.B. 86 cannot, and does not, apply in this case.

{¶ 78} Accordingly, appellant's third and final assignment of error is overruled.

{¶ 79} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

---

9. We recognize that there is case law from the Sixth and Eighth Appellate Districts that seems to suggest that H.B. 86 applies even when the defendants absconded prior to their sentencing, thereby causing their sentencing hearings to occur after the effective date of H.B. 86. However, we find these cases unpersuasive, as they do not set forth any rationale for applying H.B. 86 to a defendant who purposely avoids sentencing. *See State v. Boltz*, 6th Dist. No. WD-12-012, 2013-Ohio-1830; *State v. Blackburn*, 8th Dist. Nos. 97811, 97812, 2012-Ohio-4590.